# 07 CV 5454

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

HALPERT ENTERPRISES, On Behalf of Itself and All
Others Similarly Situated,

                             Plaintiff,

          vs.

ABN AMRO HOLDING N.V., RIJKMAN GROENINK,
WILCO JISKOOT, JOOST KUIPER, HUGH SCOTT-
BARRETT, HUIBERT BOUMEESTER, PIERO
OVERMARS, RON TEERLINK, ARTHUR MARTINEZ,
ANDRE OLIJSLAGER, LOUISE GROENMAN, DAVID
BARON DE ROTHSCHILD, TRUDE MAAS-DE
BROUWER, MARCUS PRATINI DE MORAES, PAOLO
SCARONI, LORD SHARMAN OF REDLYNCH, ROB VAN
DEN BERGH, ANTHONY RUYS, GERT-JAN KRAMER,
GERHARD RANDA and BANK OF AMERICA CORP.,

                            Defendants.

-------------------------------------------------------------- X

Civ. Action No. _____

Supreme Court for the State
of New York, New York
County, Index No.
07601397/07

JUN 08 2007

NEW YORK
COUNTY CLERK'S OFFICE

JUN 8 2007

NOT COMPARED
WITH COPY FILE

TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR
      THE SOUTHERN DISTRICT OF NEW YORK

## NOTICE OF REMOVAL

      Defendant Bank of America Corporation ("Bank of America") hereby removes

this action from the Supreme Court of the State of New York, County of New York, to the

United States District Court for the Southern District of New York on the grounds that the dis-

trict court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdic-

tion pursuant to 15 U.S.C. § 78bb(f)(2) and 28 U.S.C. § 1331.  All defendants consent to re-

moval.  The written consent of all other defendants is attached hereto as Exhibit A.

## Background

1.       On April 22, 2007, Bank of America entered into a Purchase and Sale Agreement ("PSA") with ABN AMRO Bank N.V. ("ABN Bank"), a subsidiary of ABN AMRO Holding N.V. ("ABN"), to buy the ABN subsidiary that holds LaSalle Bank Corporation ("LaSalle") for $21 billion.

2.       On April 23, 2007, ABN publicly disclosed the LaSalle transaction and also disclosed that it had entered into a an agreement to merge with Barclays PLC ("Barclays") in a stock-for-stock transaction that valued ABN at approximately $88 billion.

3.       On April 27, 2007, Plaintiff Halpert Enterprises filed a putative class action on behalf of ABN Shareholders against defendants Rjikman Groenink, Wilco Jiskoot, Joost Kuiper, Hugh Scott-Barrett, Huibert Boumeester, Piero Overmars, Ron Teerlink, Arthur Martinez, Andre Olijslager, Louise Groenman, David Baron de Rothschild, Trude Maas-De Brouwer, Marcus Pratini de Moraes, Paolo Scaroni, Lord Sharman of Redlynch, Rob van den Bergh, Anthony Ruys, Gert-Jan Kramer, Gerhard Randa (collectively, the "Individual Defendants"), ABN and Bank of America (collectively, "Defendants") in the Supreme Court of the State of New York, New York County (the "Action").

4.       Plaintiff alleges that ABN and the Individual Defendants breached their fiduciary duties by agreeing to the LaSalle and Barclays transactions.  Complaint ¶¶ 2, 36, 37, 49, 53, 63-72.  Plaintiff claims that the purpose of the LaSalle transaction was to thwart a potential competing bid for ABN as a whole that would have provided greater value to ABN shareholders than the Barclays deal.  *Id.* ¶¶ 45, 49.  Plaintiff seeks, among other things, to enjoin the Barclays deal, to compel the Individual Defendants to fulfill their fiduciary obligations, and to

impose a constructive trust in favor of the class upon any benefits improperly received by the Defendants as a result of their alleged wrongdoing. Complaint, Prayer ¶¶ D, E, & G. Plaintiff further requests a declaration against all Defendants, including Bank of America, that the $200 million termination fee specified in the PSA is unenforceable. *Id.*, Prayer ¶ B.

5.    On April 26, 2007, a Dutch shareholder advocacy group commenced an action in the Enterprise Chamber of the Amsterdam Court of Appeals against ABN seeking a ruling that the sale of LaSalle would require a shareholder vote under Dutch law and that the transaction was contrary to Dutch law in other respects.

6.    On May 3, 2007, the Enterprise Chamber issued an order forbidding the implementation and consummation of the PSA pending approval of the LaSalle transaction by ABN's shareholders.

7.    On May 4, 2007, Bank of America commenced an action against ABN and ABN Bank in the United States District Court for the Southern District of New York. *See Bank of America Corp.* v. *ABN AMRO Bank N.V.* and *ABN AMRO Holding N.V.*, No. 07 Civ. 3578. In that action, Bank of America alleges that ABN Bank breached the PSA by making representations and warranties to Bank of America that were not true and correct, including, *inter alia*, that it had full corporate power and authority to execute the PSA and that no corporate proceedings, including any shareholder approval, were necessary to consummate the LaSalle transaction. Bank of America has requested specific performance of the PSA, injunctive relief, and damages. The action has been assigned to the Honorable P. Kevin Castel.

3

**Diversity Jurisdiction**

8.      The district court has original jurisdiction over the Action pursuant to 28 U.S.C. § 1332(a)(3).

9.      Complete diversity of citizenship exists under that provision as the Action "is between . . . citizens of different States and in which citizens or subjects of a foreign state are additional parties." *Id.*

10.      Plaintiff Halpert Enterprises is incorporated and maintains its principal place of business in the State of Arizona.

11.      Defendant ABN is incorporated in the Netherlands and maintains its principal place of business in Amsterdam, the Netherlands.

12.      All of the Individual Defendants are citizens of foreign countries, with the exception of Mr. Martinez, who is a citizen of the State of Connecticut.  All other Individual Defendants are citizens of the Netherlands, with the exceptions of David Baron de Rothschild (citizen of France); Hugh Scott-Barrett (citizen of the United Kingdom); Paolo Scaroni (citizen of Italy); Lord Sharman of Redlynch (citizen of the United Kingdom); Marcus Pratini de Morales (citizen of Brazil); and Garhard Randa (citizen of Austria).  None of the Individual Defendants who are citizens of foreign countries are permanent residents of the United States.

13.      Defendant Bank of America is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

14.      The amount in controversy exceeds the sum or value of $75,000, exclusive of interest or costs.

4

**Federal Question Jurisdiction**

15.    This Court also has original jurisdiction over the Action pursuant to 28
U.S.C. § 1331 because the Action arises under the Securities Litigation Uniform Standards Act
of 1998 ("SLUSA"). SLUSA provides that "Any covered class action brought in any State court
involving a covered security, as set forth in paragraph (1), shall be removable to the Federal dis-
trict court for the district in which the action is pending, and shall be subject to paragraph (1). 15
U.S.C. § 78bb(f)(2). Paragraph (1) of SLUSA prohibits a private party from maintaining a "cov-
ered class action based upon the statutory of common law of any State or subdivision thereof al-
leging: (A) a misrepresentation or omission of a material fact in connection with the purchase or
sale of a covered security; or (B) that the defendant used or employed any manipulative device or
contrivance in connection with the purchase or sale of a covered security." *Id.* § 78bb(f)(1).

16.    The Action satisfies Subsection (A) in that the Complaint alleges misrep-
resentations or omissions of material fact in connection with the purchase or sale of ABN securi-
ties, including allegations that the Defendants breached their "duties of candor" and have chosen
"not to provide shareholders with all information necessary to make an informed decision" in
connection with the Barclays transaction. Complaint ¶ 36; *see also id.* ¶¶ 54(g), 57(g), 66, 67(d).
The Action also satisfies Subsection (B) in that the Complaint alleges that the LaSalle transaction
was a "poison pill" designed to thwart a potential higher offer for ABN as a whole. *Id.* ¶ 46.

17.    The Action is a "covered class action." SLUSA defines "covered class ac-
tion" as one in which "damages are sought on behalf of more than 50 persons or prospective
class members," or where "one or more named parties seek to recover damages on a representa-
tive basis on behalf of themselves and other unnamed parties similarly situated." 15 U.S.C. §

78bb(f)(5)(B)(i)(I) & (II). Although the Complaint artfully avoids an express prayer for damages, the courts will not allow a plaintiff to avoid SLUSA by such an omission. *See Bertram* v. *Tarayon Comm'cns Sys.*, 2001 WL 514358, at *3 (C.D. Cal. Mar. 27, 2001). The Complaint includes multiple allegations that Defendants' conduct has caused monetary loss to the putative class, alleges that Defendants seek to "aggrandize their own financial position and interests at the expense of and to the detriment of public shareholders," and asks the Court to impose a "constructive trust" in favor of the putative class upon any benefits improperly received by defendants. Complaint ¶¶ 8, 36, 51 & Prayer ¶ G. Thus, through the device of a "constructive trust," Plaintiff seeks to obtain a monetary recovery from defendants. In addition, Plaintiff demands a jury trial, further demonstrating that Plaintiff is really seeking legal remedies.

18.    The Action satisfies the requirement that the securities be "covered securit[ies]." *See* 15 U.S.C. § 77bb(f)(5)(E). A covered security includes any security "listed, or authorized for listing, on the New York Stock Exchange." 15 U.S.C. § 77r(b)(1)(A). ABN shares are listed on the New York Stock Exchange.

19.    Because the Action falls within the terms of SLUSA, it is removable to federal court. 15 U.S.C. § 78bb(f)(2).

## Removal

20.    Bank of America hereby exercises its rights under the provisions of 28 U.S.C. § 1441, *et seq.*, to remove the above-captioned action from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York.

21.    Bank of America is the only defendant that has been served with a summons or complaint in the Action.  The complaint was served on Bank of America on May 9, 2006.  This Notice is timely filed.  *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (notice of removal must be filed 30 days from service).

22.    Pursuant to 28 U.S.C. § 1446(a) and Rule 81.1(b) of the Local Civil Rules of the United States District Court for the Southern District of New York, copies of the Summons and Complaint filed in the Action are attached hereto as Exhibit B.  A copy of Bank of America's Answer is attached as Exhibit C.

23.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the Supreme Court of the State of New York, County of New York, and Bank of America will give written notice of the filing of this Notice to all adverse parties in the Action.

24.    By filing this Notice of Removal, Bank of America does not waive any defense that may be available to it, including, but not limited to, any objections to personal jurisdiction or venue or any defense for failure to state a claim.

25.    Bank of America reserves the right to amend or supplement this Notice of Removal.

Dated:        June 8, 2007
              New York, New York

WACHTELL, LIPTON, ROSEN & KATZ

By: _____

Eric M. Roth (ER-6632)

Of Counsel:
   Rachelle Silverberg (RS-8285)
   Stephen R. DiPrima (SD-7312)

51 West 52nd Street
New York, New York  10019
(212) 403-1000

*Attorneys for Bank of America Corporation*

# EXHIBIT A

# DAVIS POLK & WARDWELL

450 LEXINGTON AVENUE
NEW YORK, NY 10017
212 450 4000
FAX 212 450 3800

MENLO PARK
WASHINGTON, D.C.
LONDON
PARIS
FRANKFURT
MADRID
TOKYO
BEIJING
HONG KONG

LAWRENCE PORTNOY
212 450 4874
LAWRENCE.PORTNOY@DPW.COM

June 7, 2007

Re:  Halpert Enterprises, On Behalf of Itself and All Others Similarly
Situated v. ABN AMRO Holding, N.V. et al. (Index No. 077601397)

Stephen R. DiPrima
51 West 52nd Street
New York, New York 10019

Dear Mr. DiPrima:

We represent ABN AMRO Holding N.V. and all of the individuals named
as defendants in the above-referenced action (Rijkman Groenink, Wilco Jiscott,
Joost Kupier, Hugh Scott-Barrett, Huibert Boumeester, Piero Overmars, Ron
Teerlink, Arthur Martinez, Andre Olijslager, Louise Groenman, David Baron de
Rothschild, Trude Maas-de-Brouwer, Marcus Pratini de Morales, Paolo Scaroni,
Lord Sharman of Redlynch, Rob van den Bergh, Anthony Ruys, Gert-Jan Kramer
and Gerhard Randa).   To date, none of our clients have been served.

We have been advised that Bank of America wishes to remove the action
to the United States District Court for the Southern District of New York.   Please
be advised that each of our clients hereby consents to that removal.   These
consents are given without prejudice to any defenses each of our clients may
have, including but not limited to, the defenses of lack of personal jurisdiction,
improper venue and forum non-conveniens.   These consents are also given
without prejudice to the rights of my clients to be served with the summons and
complaint as required by law.

Very truly yours,

Lawrence Portnoy

# EXHIBIT B

SCANNED ON 4/29/2010

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | |
|---|---|
| HALPERT ENTERPRISES, On Behalf of Itself and All Others Similarly Situated, | Index No. |
| **Plaintiff,** | Plaintiff designates New York County |
| v. | as the place of trial |
| ABN AMRO HOLDING N.V., RIJKMAN GROENINK, WILCO JISKOOT, JOOST KUIPER, HUGH SCOTT-BARRETT, HUIBERT BOUMEESTER, PIERO OVERMARS, RON TEERLINK, ARTUR MARTINEZ, ANDRE OLIJSLAGER, LOUISE GROENMAN, DAVID BARON DE ROTHSCHILD, TRUDE MAAS-DE BROUWER, MARCUS PRATINI DE MORAES, PAOLO SCARONI, LORD SHARMAN OF REDLYNCH, ROB VAN DEN BERGH, ANTHONY RUYS, GERT-JAN KRAMER, GERHARD RANDA AND BANK OF AMERICA CORP., | The basis of the venue is   07601397 Defendant's residence   **SUMMONS** |
| **Defendants.** | |

07601397

FILED

APR 27 2007

NEW YORK
COUNTY CLERKS O...

*To the above named Defendants:*

   ***YOU ARE HEREBY SUMMONED*** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  April 26, 2007

Law Offices of Thomas G. Amon
Thomas G. Amon

Attorneys for Plaintiff
Office and Post Office Address:

Defendant's Address:

ABN Amro Holding N.V.
c/o Legal Department
500 Park Avenue
New York, NY, 10022

500 Fifth Avenue, Suite 1650
New York, NY 10110
(212) 810-2430

Robbins Umeda & Fink, LLP
Marc M. Umeda
S. Benjamin Rozwood
Shane P. Sanders
610 West Ash Street, Suite 1800
San Diego, CA 92101
(619) 525-3990

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | |
|---|---|
| HALPERT ENTERPRISES, On Behalf of Itself and All Others Similarly Situated, | |
| Plaintiff, | Index No. |
| v. | |
| ABN AMRO HOLDING N.V., RIJKMAN GROENINK, WILCO JISKOOT, JOOST KUIPER, HUGH SCOTT-BARRETT, HUIBERT BOUMEESTER, PIERO OVERMARS, RON TEERLINK, ARTUR MARTINEZ, ANDRE OLIJSLAGER, LOUISE GROENMAN, DAVID BARON DE ROTHSCHILD, TRUDE MAAS-DE BROUWER, MARCUS PRATINI DE MORAES, PAOLO SCARONI, LORD SHARMAN OF REDLYNCH, ROB VAN DEN BERGH, ANTHONY RUYS, GERT-JAN KRAMER, GERHARD RANDA AND BANK OF AMERICA CORP., | |
| Defendants. | |

SHAREHOLDER CLASS COMPLAINT BASED UPON SELF-DEALING AND
BREACH OF FIDUCIARY DUTY

Plaintiff, by its attorneys, submits this Shareholder Class Complaint Based upon Self-Dealing and Breach of Fiduciary Duty (the "Complaint") against the defendants named herein.

## SUMMARY OF THE ACTION

1. This is a stockholder class action brought by plaintiff on behalf of the holders of ABN AMRO Holding N.V. ("ABN" or the "Company") common stock against ABN and its directors arising out of their attempts to provide certain ABN insiders and directors with preferential treatment in connection with their efforts to complete the sale of ABN to Barclays PLC ("Barclays") (the "Acquisition"). This action seeks equitable relief only.

2. In pursuing the unlawful plan to squeeze out ABN's public stockholders for grossly inadequate consideration, the defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and have aided and abetted such breaches by ABN's officers and directors. Instead of attempting to obtain the highest value reasonably available for the Company's stockholders, defendants spent a substantial effort tailoring the Acquisition to meet the specific needs of Barclays.

3. Specifically, in connection with the Acquisition, defendants arranged to sell the Company's lucrative LaSalle Bank Corporation unit ("LaSalle") to Bank of America Corp. ("BOA") in an effort to discourage higher bids. Indeed, a consortium of banks led by the Royal Bank of Scotland Group PLC ("RBS") expressed an interest in paying 10% more than Barclays primarily because of their interest in LaSalle. Defendants ignored RBS' indications of interest and proceeded with the Acquisition on the very same day that they were supposed to discuss the particulars of RBS's bid.

4. RBS, however, is refusing to give up on its designs for the lucrative LaSalle unit. On April 25, 2007, the RBS led consortium made a bid that is *13% higher* than Barclays' offer.

5. Faced with the higher offer, defendants reluctantly agreed to open the door to due diligence with the RBS led consortium, but at the same time are attempting to hamstring any potential transactions that may arise from it. Indeed, defendants inserted a provision in the

- 1 -

confidentiality agreement with RBS that prevents the consortium from making a formal bid within the next 12 months without ABN's written consent.

6.      It is apparent from defendants' management of the Acquisition process that they are acting to benefit themselves rather than the Company's shareholders.

7.      Because defendants dominate and control the business and corporate affairs of ABN and are in possession of private corporate information concerning ABN's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of ABN, which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

8.      In short, the Acquisition is designed to unlawfully divest ABN's public stockholders of their holdings without providing them the maximized value they are entitled to.  Defendants know that these assets will continue to produce substantial revenue and earnings.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this County, or is an individual who has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by the New York courts permissible under traditional notions of fair play and substantial justice.  These contacts include, but are not limited to, the fact that the Company's shares are traded on the New York Stock Exchange.

10.      Venue is proper in this Court because one or more of the defendants maintains offices in this County.

## PARTIES

11.      Plaintiff Halpert Enterprises is, and at all times relevant hereto was, a shareholder of ABN.

12.      Defendant ABN provides a range of banking products and financial services to consumer and commercial clients.

13.   Defendant Rijkman Groenink ("Groenink") is Chairman of ABN's managing board.

14.   Defendant Wilco Jiskoot is a director on ABN's managing board.

15.   Defendant Joost Kuiper is a director on ABN's managing board.

16.   Defendant Hugh Scott-Barrett is a director on ABN's managing board.

17.   Defendant Huibert Boumeester is a director on ABN's managing board.

18.   Defendant Piero Overmars is a director on ABN's managing board.

19.   Defendant Ron Teerlink is a director on ABN's managing board.

20.   Defendant Artur Martinez is Chairman of ABN's supervisory board.

21.   Defendant Andre Olijslager is Vice Chairman of ABN's supervisory board.

22.   Defendant Louise Groenman is a director on ABN's supervisory board.

23.   Defendant David Baron de Rothschild is a director on ABN's supervisory board.

24.   Defendant Trude Maas-de Brouwer is a director on ABN's supervisory board.

25.   Defendant Marcus Pratini de Moraes is a director on ABN's supervisory board.

26.   Defendant Paolo Scaroni is a director on ABN's supervisory board.

27.   Defendant Lord Sharman of Redlynch is a director on ABN's supervisory board.

28.   Defendant Rob van den Bergh is a director on ABN's supervisory board.

29.   Defendant Anthony Ruys is a director on ABN's supervisory board.

30.   Defendant Gert-Jan Kramer is a director on ABN's supervisory board.

31.   Defendant Gerhard Randa is a director on ABN's supervisory board.

32.   Defendant BOA is a financial holding company that provides banking and non-banking financial services.

33.   The defendants named above in ¶¶13-31 are sometimes collectively referred to herein as the "Individual Defendants."

**DEFENDANTS' FIDUCIARY DUTIES**

34.   Under law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest

- 3 -

value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

      (a)    adversely affects the value provided to the corporation's shareholders;

      (b)    will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

      (c)    contractually prohibits themselves from complying with their fiduciary duties;

      (d)    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders;

      (e)    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders; and/or

      (f)    runs afoul with the dictates of reasonableness and fairness.

    35.    In accordance with their duties of loyalty and good faith, the defendants, as directors and/or officers of ABN, are obligated under law to refrain from:

      (a)    participating in any transaction where the directors' or officers' loyalties are divided;

      (b)    participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

      (c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

    36.    Plaintiff alleges herein that defendants, separately and together, in connection with the Acquisition, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith and independence owed to plaintiff and other public shareholders of ABN. Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or or other public shareholders of ABN, and choosing not to provide shareholders with all information

- 4 -

necessary to make an informed decision in connection with the Acquisition.  As a result of defendants' self-dealing and divided loyalties, neither plaintiff nor other public shareholders of ABN will receive adequate or fair value for their ABN common stock in the proposed Acquisition.

37.    Because defendants are knowingly or recklessly breaching their duties of loyalty, good faith and independence in connection with the Acquisition, the burden of proving the inherent or entire fairness of the Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon defendants as a matter of law.

## BACKGROUND TO THE AQUISITION

38.    Throughout March and April 2007, defendants engaged in exclusive talks with Barclays concerning a potential Acquisition of the Company.  These talks were complicated, however, by an April 13 letter from Barclays' rival RBS.

39.    In the April 13 letter, RBS expressed its own interest in acquiring the Company, together with a consortium including Fortis NV ("Fortis") and Banco Santander Central Hispano S.A. ("Santander").  RBS' primary interest in acquiring ABN stems from the Company's lucrative LaSalle Bank subsidiary located in Chicago.

40.    Defendants and RBS scheduled a meeting to discuss a potential bid on April 24, 2007.

## THE ACQUISITION

41.    On April 23, 2007, just before defendants were to meet with the RBS led consortium, defendants announced the Acquisition.  Further, in an apparent effort to spoil RBS' interest in the Company, ABN quickly entered into a separate transaction with BOA over the course of *four days* to sell the LaSalle subsidiary for $21 billion.  Indeed, the LaSalle sale includes a $200 million termination fee designed to discourage RBS and other rival bidders.

42.    On that day, ABN issued the following press release announcing the Acquisition:

The Managing Board and Supervisory Board of ABN AMRO Holding N.V. ("ABN AMRO") and the Board of Directors of Barclays PLC ("Barclays") jointly announce that agreement has been reached on the combination of ABN AMRO and Barclays. Each of the Boards has unanimously resolved to recommend the transaction to its

respective shareholders. The holding company of the combined group will be called Barclays PLC.

The proposed merger of ABN AMRO and Barclays will create a strong and competitive combination for its clients with superior products and extensive distribution. The merged group is expected to generate significant and sustained future incremental earnings growth for shareholders.

The combination of ABN AMRO and Barclays will benefit from a diversified customer base and geographic mix. The proposed merger will create:

- A leading force in global retail and commercial banking, with world class products:

    o   47 million customers, approximately 90 per cent. of whom are in seven key markets

    o   One of the world's leading transaction banking platforms offering world class payment and trade finance solutions

    o   A top five card issuer outside the US with approximately 27m cards.

- A premier global investment bank that is a leader in risk management and financing with an enhanced product offering across a broader geographical footprint

- The world's largest institutional asset manager, with enhanced retail distribution capabilities and complementary products ensuring delivery of world class products and services to a wider customer base

- The world's eighth largest wealth manager, with a leading European onshore franchise and highly attractive positions in growth markets

**Merger Highlights**

- The proposed merger will be implemented through an exchange offer pursuant to which ABN AMRO ordinary shareholders will receive 3.225 ordinary shares in Barclays ("New Barclays Shares") for each existing ABN AMRO ordinary share (the "Offer"). Under the terms of the Offer, Barclays existing ordinary shareholders will own approximately 52 per cent. and ABN AMRO existing ordinary shareholders will own approximately 48 per cent. of the combined group

- Based on the share price of Barclays ordinary shares on 20 April 2007, the Offer values each ABN AMRO ordinary share at EUR 36.25 taking into account that ABN AMRO ordinary shareholders will be entitled to receive the declared EUR 0.60 2006 final dividend. In addition, depending on the timetable to completion, ABN AMRO ordinary

- 6 -

shareholders will also benefit from Barclays 2007 final dividend, which has a greater final dividend to total dividend weighting than ABN AMRO. The implied value of the Offer represents a premium for ABN AMRO shareholders of approximately:

  o  33 per cent. to the share price of ABN AMRO ordinary shares on 16 March 2007, the last trading day prior to the announcement that ABN AMRO and Barclays were in talks

  o  49 per cent. over the average share price of ABN AMRO ordinary shares in the 6 months up to and including to 16 March 2007

- The combined group will have a UK corporate governance structure with a unitary Board. Arthur Martinez will be the Chairman, John Varley will be the Chief Executive Officer, and Bob Diamond will be President. The new board will initially consist of 10 members from Barclays and 9 members from ABN AMRO

- Barclays will be the holding company for the combined group. The UK Financial Services Authority ("FSA") and De Nederlandsche Bank ("DNB") have agreed that the FSA will be the lead supervisor of the combined group

- The head office of the combined group will be located in Amsterdam

- ABN AMRO and Barclays estimate that the combination will result in annual pre-tax synergies of approximately EUR 3.5bn by 2010, approximately 80 per cent. of which is expected to result from cost synergies and the remainder from revenue benefits. Capturing the expected synergies will assist the management of the combined group in achieving top quartile cost:income ratios across all businesses by 2010

- Bank of America Corp has today agreed to acquire LaSalle Bank Corporation ("LaSalle") for USD21 billion and is expected to complete this acquisition before completion of the Offer. The completion of the sale of LaSalle is a condition of the Offer. Taking into account the excess capital released by the sale of LaSalle approximately EUR 12 billion is expected to be distributed to the shareholders of the combined group in a tax efficient form primarily through buy backs after completion of the Offer. The full value of the sale of LaSalle on these terms is reflected in the exchange ratio of the proposed merger. The combined group will continue to be a leading franchise in investment banking and investment management in the US. The combined group will continue to explore opportunities to develop its existing US businesses

- It is expected that the proposed merger will lead to significant accretion in ABN AMRO's 2008 cash earnings per share for accepting ABN AMRO ordinary shareholders and is expected to be 5 per cent. accretive

- 7 -

to Barclays cash earnings per share in 2010. The Board of Barclays
expects that the return on investment will be approximately 13 per cent.
in 2010.

- The proposed merger is expected to complete during the fourth quarter of
2007.

43.     Also on that same day, ABN issued the following press release announcing the sale of

LaSalle to BOA:

Separate from today's announcement of the proposed merger of ABN AMRO
Holding N.V. ("ABN AMRO") with Barclays PLC ("Barclays"), the Managing
Board and the Supervisory Board of ABN AMRO today announce the sale of ABN
AMRO North America Holding Company which principally consists of the retail and
commercial banking activities of LaSalle Bank Corporation ("LaSalle") to Bank of
America for USD 21 billion in cash. ABN AMRO's North American Asset
Management businesses and certain businesses within ABN AMRO's North
American Global Markets and Global Clients operations do not form part of the sale.

Headquartered in Chicago, *LaSalle has been the centrepiece of ABN
AMRO's US operations since its acquisition nearly 30 years ago*. As a result of both
organic and acquisition growth, LaSalle became one of the 20 largest bank holding
companies in the United States. Through its two principal subsidiaries, LaSalle Bank
N.A. and LaSalle Bank Midwest N.A., LaSalle operates a network of more than 400
branches and more than 1,500 ATMs in Illinois, Michigan and Indiana and more than
25 regional lending offices throughout the country.

As at 31 December 2006, LaSalle had more than USD 113 billion in tangible
assets and a tangible book value of USD 9.7 billion. These figures are adjusted for
businesses retained by ABN AMRO and the previously announced sale of the
mortgage operations unit and presented on a US GAAP basis. For the year ended 31
December 2006, LaSalle, presented on the same basis, had net income of USD 1,035
million. On the basis of the above, the purchase price of USD 21 billion represents a
2006 price to earnings multiple of 20.3 and a 2006 price to tangible book value
multiple of 2.2.

*The sale of LaSalle is expected to generate a very significant gain*. Taking
into account the excess capital from the sale of LaSalle, the management of the
combined group resulting from the proposed merger of ABN AMRO and Barclays
expects to distribute approximately EUR 12 bln to the shareholders of the combined
group in a tax efficient form, primarily through buy-backs after completion of the
offer. The value of the sale of LaSalle to ABN AMRO shareholders is reflected in the
exchange ratio agreed with Barclays.

The sale of LaSalle is expected to complete late 2007 and is subject to
regulatory approvals and other customary closing conditions. The sale and purchase
agreement permits ABN AMRO to execute a similar agreement for a higher offer for
LaSalle for the same business for a period of 14 calendar days from the date of the

- 8 -

agreement, permits Bank of America to match any higher offer and *provides for a termination fee of USD 200 million payable to Bank of America if the agreement is terminated* under certain limited circumstances. The agreement also provides for a purchase price adjustment linked to the financial performance of LaSalle before the completion of the transaction.

LaSalle represents a unique and important strategic opportunity for Bank of America in augmenting its unparalleled business platform in the US.

"LaSalle has been a wonderful platform for ABN AMRO in the United States because of its strong focus on customer service, dedicated employees, community involvement and civic leadership," said Joost Kuiper, member of the Managing Board of ABN AMRO and responsible for the Business Unit North America.

"LaSalle is an outstanding business and has demonstrated an impressive record of growth and profitability. In light of this record, the Managing Board decided that greater value for our shareholders could be achieved by finding the right buyer," commented Rijkman Groenink, Chairman of the Managing Board of ABN AMRO. "Today's announcement is clear evidence of the tremendous value created for our shareholders. I would personally like to thank the management and staff at LaSalle for their many years of loyal service and success as part of the ABN AMRO organisation. I wish them continued success in the future."

ABN AMRO was advised by UBS Limited as lead financial adviser. ABN AMRO was further advised by Morgan Stanley & Co. Limited and Lehman Brothers as financial advisers. The Supervisory Board of ABN AMRO was advised by Goldman Sachs International. Legal counsel was provided to ABN AMRO by Davis Polk & Wardwell along with Vedder, Price, Kaufman & Kammholz, P.C. as to US law, and by Nauta Dutilh N.V. and Allen & Overy LLP as to Dutch law.

44.     According to the *Wall Street Journal*, the RBS led consortium claimed that it was willing to pay 10% more than Barclays on the condition that LaSalle was included in the acquisition. The RBS led consortium made good on that claim, on April 25, 2006, when it announced a bid *13% higher* than Barclays' offer. RBS' offer is conditioned on acquiring all of the Company's assets including LaSalle. While discussing the bid, RBS CEO Fred Goodwin explained that the LaSalle subsidiary is a "major piece" of the bid.

45.     After making the bid, representatives of RBS discussed the consortium's interest in ABN and LaSalle with defendant Groenink. During the discussions, Groenink invited RBS to make separate bids for ABN and LaSalle. In other words, Groenink is attempting to price ABN out of RBS' reach since RBS will not only have to exceed Barclays' offer, but will also have to exceed

- 9 -

BOA's original offer and counter bids—not to mention the $200 million termination fee. RBS will not be willing to engage in a bidding war with BOA over LaSalle and may withdraw its bid for the whole Company, thus depriving plaintiff and ABN's other shareholders of the maximized value that they are entitled to.

46.     Groenink defended his strategy at ABN's annual meeting held on April 25, 2007 by insisting that: "[e]veryone should realize that this is actually a very good structure for shareholders, as it maximized the price we get for LaSalle as well as for the rest of the group." ABN's shareholders were not impressed. Tom Shrager, a director of Tweedy, Browne Co., an ABN shareholder, commented that: "You *cannot create poison pills* and, the same time, tell people that you are open to other offers."

47.     Another shareholder, at the annual meeting, wanted to know how ABN could have possibly evaluated BOA's offer for LaSalle in the four days it took to draw up the contract. And several shareholders believe that the LaSalle sale should have been put to a shareholder vote because of its affect on RBS' ability to bid for the entire Company.

48.     Also on April 25, 2007, ABN issued a statement that it would open its books and conduct due diligence with the RBS led consortium "in line with ABN Amro's ongoing commitment to consider value-creating opportunities for shareholders." Defendants' "commitment" is questionable, however. Indeed, defendants inserted a provision in the confidentiality agreement with RBS that *prevents* the consortium from making a formal bid within the next 12 months without ABN's written consent.

### SELF-DEALING

49.     It is apparent from defendant's management of the Acquisition process that they are acting to benefit themselves rather than the Company's shareholders. The Acquisition and the sale of LaSalle to BOA are impermissibly designed to discourage the RBS consortium's higher bid. Further, the RBS led consortium has made it clear that it is willing to pay a higher price, yet defendants are acting to embrace the lower Barclays bid. This conduct is in breach of their fiduciary duties owed to

- 10 -

ABN's shareholders to maximize shareholder value and runs afoul of the dictates of reasonableness and fairness.

50.     By reason of their positions with ABN, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of ABN, and especially the true value and expected increased future value of ABN and its assets, which they have not disclosed to ABN's public stockholders. Moreover, despite their duty to maximize shareholder value, the defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of ABN's public shareholders.

51.     The proposed sale is wrongful, unfair and harmful to ABN's public stockholders, and represents an effort by defendants to aggrandize their own financial position and interests at the expense of and to the detriment of ABN's public stockholders. Specifically, defendants are attempting to deny plaintiff and other public shareholders of ABN their shareholder rights via the sale of ABN on terms that do not adequately value the Company. Accordingly, the Acquisition will only benefit defendants and Barclays.

52.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the sale of ABN and allow the shares to trade freely – without impediments;

- Withdraw their consent to the sale of LaSalle to BOA and seek a cancellation of the $200 million termination fee because it is contrary to law;

- Act independently so that the interests of ABN's public stockholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of ABN's public stockholders; and

- Consider alternatives to the proposed Acquisition including the solicitation of bids from interested parties to assure that the Company's shareholders are receiving the maximum value for their shares.

- 11 -

## DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE

53.     As a result of defendants' conduct, ABN's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  In order to meet their fiduciary duties, defendants are obligated to maximize shareholder value, not structure a preferential deal for themselves.  The proposed Acquisition, as structured, does not represent the maximized value that ABN shareholders are entitled to.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action on its own behalf and as a class action on behalf of all holders of ABN stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

55.     This action is properly maintainable as a class action.

56.     The Class is so numerous that joinder of all members is impracticable.  According to ABN's Securities and Exchange Commission filings, there were more than 1.8 billion ordinary shares of ABN common stock outstanding as of December 31, 2006.

57.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

            (a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Acquisition;

            (b)     whether the Individual Defendants failed to conduct themselves in accordance with the dictates of reasonableness and fairness;

            (c)     whether the defendants are engaging in self-dealing in connection with the Acquisition;

- 12 -

(d)     whether the defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Acquisition;

(e)     whether the defendants are unjustly enriching themselves and other insiders or affiliates of ABN;

(f)     whether the defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(g)     whether the defendants have breached their fiduciary duties of candor to plaintiff and the other members of the Class in connection with the Acquisition by failing to disclose all material information concerning the Acquisition;

(h)     whether the defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets; and

(i)     whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

58.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

59.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

60.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

61.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

- 13 -

62.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants and ABN

63.     Plaintiff repeats and realleges each allegation set forth herein.

64.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, candor and independence owed to the public shareholders of ABN; failed to conduct themselves in accordance with the dictates of reasonableness and fairness; and have acted to put their personal interests ahead of the interests of ABN's shareholders.

65.     By the acts, transactions and courses of conduct alleged herein, the defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in ABN.

66.     The Individual Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by entering into a transaction with ABN without regard to the fairness of the transaction to ABN's shareholders and by failing to disclose all material information concerning the Acquisition to such shareholders.

67.     As demonstrated by the allegations above, the defendants breached their duties of loyalty, good faith, candor and independence owed to the shareholders of ABN because, among other reasons:

(a)     they failed to take steps to maximize the value of ABN to its public shareholders and they took steps to avoid competitive bidding, to cap the price of ABN's stock and to give the Individual Defendants an unfair advantage and purposefully avoiding a proper auction, by, among other things, failing to solicit other potential acquirers or alternative transactions;

(b)     they failed to properly value ABN;

- 14 -

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Acquisition; and

(d)     they failed to disclose all material information that would permit ABN's stockholders to cast a fully informed vote on the Acquisition.

68.     Because the Individual Defendants dominate and control the business and corporate affairs of ABN, and are in possession of private corporate information concerning ABN's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of ABN which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

69.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

70.     Defendant ABN aided and abetted the Individual Defendants' breaches of fiduciary duties.

71.     Unless enjoined by this Court, the defendants will continue to breach their fiduciary duties owed to plaintiff and the Class, and may consummate the proposed Acquisition which will exclude the Class from its fair share of ABN's valuable assets and businesses, and/or benefit them in the unfair manner complained of herein, all to the irreparable harm of the Class. Moreover, unless the Acquisition is enjoined by the Court, defendants will not engage in arm's-length negotiations on the Acquisition terms, and will not supply to ABN's stockholders sufficient information to enable them to cast informed votes on the Acquisition and may consummate the Acquisition, all to the irreparable harm of plaintiff and the members of the Class.

72.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

- 15 -

73.     Plaintiff and the members of the Class have an inadequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### Against All Defendants for Declaratory Relief

74.     Plaintiff and the Class as shareholders of ABN have interests in the transaction entered into between ABN and BOA for the sale of LaSalle.  Specifically, the LaSalle transaction was designed to discourage further bids and to prevent plaintiff and the Class form receiving the maximized value that they are entitled to.

75.     The termination fee clause contained within the contract between ABN and BOA provides that ABN must pay a $200 million termination fee if it seeks to cancel the sale of LaSalle.

76.     The termination fee is unreasonable and unenforceable because it does not represent a reasonable estimate of BOA's actual expenses in the event that the contract to sell LaSalle to BOA is breached.

77.     Accordingly, plaintiff and the Class request that this Court declare that the termination fee clause contained within the contract between ABN and BOA for the sale of LaSalle is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in its favor and in favor of the Class and against defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring that the termination fee clause contained within the contract between ABN and BOA for the sale of LaSalle is unenforceable;

C.     Declaring and decreeing that the Acquisition agreement was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

- 16 -

D.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Acquisition, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

E.      Directing defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of ABN's shareholders until the process for the sale or auction of the Company is completed and the highest possible value is obtained;

F.      Rescinding, to the extent already implemented, the Acquisition or any of the terms thereof;

G.      Imposition of a constructive trust, in favor of plaintiff and the members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

H.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

I.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 26, 2007

LAW OFFICES OF THOMAS G. AMON
THOMAS G. AMON

THOMAS G. AMON

500 Fifth Avenue, Suite 1650
New York, N.Y. 10110
Telephone: (212) 810-2431
Facsimile: (212) 810-2427

ROBBINS UMEDA & FINK, LLP
MARC M. UMEDA
S. BENJAMIN ROZWOOD
SHANE P. SANDERS
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

- 17 -

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

HALPERT ENTERPRISES, On Behalf of Itself
and All Others Similarly Situated,

Plaintiff,

v.

ABN AMRO HOLDING N.V., RIJKMAN
GROENINK, WILCO JISKOOT, JOOST
KUIPER, HUGH SCOTT-BARRETT,
HUIBERT BOUMEESTER, PIERO
OVERMARS, RON TEERLINK, ARTHUR
MARTINEZ, ANDRÉ OLIJSLAGER, LOUISE
GROENMAN, DAVID BARON DE
ROTHSCHILD, TRUDE MAAS-DE
BROUWER, MARCUS PRATINI DE
MORAES, PAOLO SCARONI, LORD
SHARMAN OF REDLYNCH, ROB VAN DEN
BERGH, ANTHONY RUYS, GERT-JAN
KRAMER, GERHARD RANDA AND BANK
OF AMERICA CORP.,

Defendants.

Index No.: 07/601397

ANSWER OF DEFENDANT
BANK OF AMERICA
CORPORATION

Defendant Bank of America Corporation ("Bank of America"), by its

attorneys, for its answer to the Complaint, responds as follows:

SUMMARY OF THE ACTION

1.    Denies the allegations of paragraph 1, except admits that plaintiff

purports to sue on behalf of an alleged class of holders of ABN AMRO Holding N.V.

("ABN") common stock.

2.    Denies the allegations of paragraph 2.

NEW YORK
COUNTY CLERK'S OFFICE
MAY 29 2007
NOT COMPARED
WITH COPY FILE

3.      Denies the allegations of paragraph 3, except admits that: (a) the defendant directors of ABN AMRO approved the sale of the subsidiary of ABN that owns LaSalle Bank Corporation ("LaSalle") to Bank of America, and (b) a consortium of banks (the "Consortium") including Royal Bank of Scotland Group PLC ("RBS") has expressed an interest in acquiring ABN.

4.      Denies the allegations of paragraph 4, except admits that on April 25, 2007, the Consortium announced a potential proposal with respect to a potential transaction with ABN.

5.      Denies the allegations of paragraph 5.

6.      Denies the allegations of paragraph 6.

7.      Denies the allegations of paragraph 7.

8.      Denies the allegations of paragraph 8.

## JURISDICTION AND VENUE

9.      Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9, except admits that Bank of America is a corporation that conducts business in and maintains operations in New York County.

10.      Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

-2-

**PARTIES**

11.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11.

12.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12.

13.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13.

14.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14.

15.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15.

16.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16.

17.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17.

18.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18.

19.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19.

20.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20.

21.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21.

22.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22.

23.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23.

24.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24.

25.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25.

26.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 26.

27.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27.

28.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

29.    Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 29.

30.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30.

31.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31.

32.     Denies the allegations of paragraph 32, except admits that Bank of America is one of the world's largest financial institutions, serving individual consumers, small and middle market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk-management products and services.

33.     Admits the allegations of paragraph 33.

34.     Paragraph 34 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 34.

35.     Paragraph 35 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 35.

36.     Denies the allegations of paragraph 36.

37.     Denies the allegations of paragraph 37.

### BACKGROUND TO THE ACQUISITION

38.     Denies the allegations of paragraph 38.

39.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39.

-5-

40.     Denies the allegations of paragraph 40.

### THE ACQUISITION

41.     Denies the allegations of paragraph 41, except admits that:  (a) on April 22, 2007, Bank of America entered into a separate agreement to acquire the subsidiary of ABN that owns LaSalle for $21 billion (the "Purchase and Sale Agreement"); (b) the Purchase and Sale Agreement was negotiated over the course of four days; and (c) the Purchase and Sale Agreement includes a $200 million termination fee provision to which the Court is respectfully referred for the complete and accurate terms thereof.

42.     In response to the allegations of paragraph 42, admits that on April 23, 2007, the Managing Board and Supervisory Board of ABN and the Board of Directors of Barclays issued a joint press release, to which the Court is respectfully referred for the complete and accurate terms thereof.

43.     In response to the allegations of paragraph 43, admits that on April 23, 2007, the Managing Board and Supervisory Board of ABN issued a press release announcing the sale of the subsidiary that owns LaSalle to Bank of America, to which the Court is respectfully referred for the complete and accurate terms thereof.

44.     Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44, except admits that on April 25, 2007, the Consortium announced a potential proposal with respect to a potential transaction with ABN.

45.      Denies having knowledge or information to form a belief as to the truth of the allegations of paragraph 45.

46.      Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46.

47.      Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47.

48.      Denies the allegations of paragraph 48, except admits that on April 25, 2007, ABN issued a press release to which the Court is respectfully referred for the complete and accurate terms thereof.

**SELF-DEALING**

49.      Denies the allegations of paragraph 49.

50.      Denies having knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of paragraph 50, and denies the allegations in the second sentence of paragraph 50.

51.      Denies the allegations of paragraph 51.

52.      Paragraph 52 states conclusions of law to which no responsive pleading is required. Bank of America otherwise denies the allegations of paragraph 52.

**DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE**

53.      Paragraph 53 states conclusions of law to which no responsive pleading is required. Bank of America otherwise denies the allegations of paragraph 53.

-7-

## CLASS ACTION ALLEGATIONS

54.     In response to paragraph 54, Bank of America admits that plaintiff purports to bring this action on its own behalf and as a class action on behalf of all holders of ABN stock other than defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.  Bank of America otherwise denies the allegations of paragraph 54.

55.     Paragraph 55 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 55.

56.     Paragraph 56 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56.

57.     Paragraph 57 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 57.

58.     Paragraph 58 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 58.

59.     Paragraph 59 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 59.

60.     Paragraph 60 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 60.

61.     Paragraph 61 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61.

62.     Paragraph 62 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 62.

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duties Against the Individual Defendants and ABN

63.     In response to paragraph 63, Bank of America incorporates by reference its responses to paragraphs 1 through 62.

64.     Paragraph 64 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 64.

65.     Paragraph 65 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 65.

66.     Paragraph 66 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 66.

67.     Paragraph 67 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 67.

68.     Paragraph 68 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 68.

69.    Paragraph 69 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 69.

70.    Paragraph 70 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 70.

71.    Paragraph 71 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 71.

72.    Paragraph 72 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 72.

73.    Paragraph 73 states conclusions of law to which no responsive pleading is required.  Bank of America otherwise denies the allegations of paragraph 73.

## SECOND CAUSE OF ACTION

### Against All Defendants for Declaratory Relief

74.    Denies the allegations of paragraph 74.

75.    Denies the allegations of paragraph 75, except admits that the Purchase and Sale Agreement provides for the payment of a $200 million termination fee under certain circumstances and respectfully refers the Court to the Purchase and Sale Agreement for the complete and accurate terms thereof.

76.    Denies the allegations of paragraph 76.

77.    Denies the allegations of paragraph 77, except admits that plaintiff seeks a declaration that the termination fee provisions contained in the Purchase and Sale Agreement are unenforceable.

### FIRST AFFIRMATIVE DEFENSE

78.    This Court lacks subject matter jurisdiction over the action.

### SECOND AFFIRMATIVE DEFENSE

79.    The Complaint fails to state a cause of action against Bank of America.

### THIRD AFFIRMATIVE DEFENSE

80.    The termination fee provisions are enforceable in favor of Bank of America even if Bank of America's actual expenses do not exceed $200 million.

### FOURTH AFFIRMATIVE DEFENSE

81.    In approving the Purchase and Sale Agreement, ABN and the Individual Defendants fulfilled their fiduciary obligations to plaintiff and the other shareholders of ABN.

### FIFTH AFFIRMATIVE DEFENSE

82.    The claims asserted by plaintiff are derivative, not direct, in nature.

83.    Plaintiff lacks standing to sue Bank of America directly for a declaratory judgment that the termination fee provisions of the Purchase and Sale Agreement are unenforceable.

## SIXTH AFFIRMATIVE DEFENSE

84.     The Purchase and Sale Agreement provides that it shall be deemed to be made in, and in all respects shall be interpreted, construed and governed by and in accordance with, the law of the State of New York without regard to the conflict of law principles thereof.

85.     Even if the Individual Defendants breached their fiduciary obligations to plaintiff and other shareholders of ABN, the Purchase and Sale Agreement is valid and enforceable under New York law because the contract is supported by valuable consideration and Bank of America is a bona fide purchaser without notice of any fraud, breach of fiduciary duty or misuse of corporate power by the Individual Defendants.  Bank of America was entitled to rely on the apparent authority of ABN's subsidiary to enter into the Purchase and Sale Agreement, including the termination fee provisions thereof.

## SEVENTH AFFIRMATIVE DEFENSE

86.     Plaintiff is not entitled to any form of injunctive relief because plaintiff has adequate remedies at law.

WHEREFORE, defendant Bank of America demands judgment:

(1)     Dismissing the Complaint in its entirety and with prejudice against Bank of America;

(2)     Awarding Bank of America the costs and disbursements of this action, including reasonable attorneys' fees; and

-12-

(3)    Granting Bank of America such other relief as this Court may

deem proper.


Dated:    May 29, 2007
          New York, New York



                                    WACHTELL, LIPTON, ROSEN & KATZ


                              By: _____
                                    Eric M. Roth
                                    Rachelle Silverberg
                                    Stephen R. DiPrima
                                    51 West 52nd Street
                                    New York, New York  10019
                                    (212) 403-1000

                                    *Attorneys for Defendant Bank of
                                    America Corporation*



-13-

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of May, 2007, I caused a true and correct copy of the attached Answer of Defendant Bank of America Corporation, dated May 29, 2007, to be served upon:

### By Hand Delivery

Thomas G. Amon
LAW OFFICES OF THOMAS G. AMON
500 Fifth Avenue, Suite 1650
New York, NY 10110
(212) 810-2430


_____
Garrett B. Moritz

Index No.: 07/601397

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

HALPERT ENTERPRISES, On Behalf of Itself and
All Others Similarly Situated,

Plaintiff,

v

ABN AMRO HOLDING N.V., RIJKMAN
GROENINK, WILCO JISKOOT, JOOST KUIPER,
HUGH SCOTT-BARRETT, HUIBERT
BOUMEESTER, PIERO OVERMARS, RON
TEERLINK, ARTHUR MARTINEZ, ANDRÉ
OLIJSLAGER, LOUISE GROENMAN, DAVID
BARON DE ROTHSCHILD, TRUDE MAAS-DE
BROUWER, MARCUS PRATINI DE MORAES,
PAOLO SCARONI, LORD SHARMAN OF
REDLYNCH, ROB VAN DEN BERGH,
ANTHONY RUYS, GERT-JAN KRAMER,
GERHARD RANDA AND BANK OF AMERICA
CORP.,

Defendants.

## ANSWER OF DEFENDANT
## BANK OF AMERICA CORPORATION

WACHTELL, LIPTON, ROSEN & KATZ
51 WEST 52ⁿᵈ STREET
NEW YORK, N.Y. 10019
(212) 403-1000

*Attorneys for Defendant*
*Bank of America Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of June, 2007, I caused a true and correct copy of the attached Notice of Removal by Defendant Bank of America Corporation, dated June 8, 2007, to be served upon:

**<u>By Hand Delivery</u>**
Thomas J. Amon
LAW OFFICES OF THOMAS G. AMON
500 Fifth Avenue, Suite 1650
New York, NY  10110
(212) 810-2430

Amanda L. Straub